# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

JOSHUA F. SMITH,

            Petitioner,       :      Case No. 2:19-cv-2252

  - vs -                          District Judge James L. Graham
                                     Magistrate Judge Michael R. Merz

BRANDESHAWN HARRIS, Warden,
  Trumbull Correctional Institution,

                                       :
           Respondent.

## REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought *pro se* by Petitioner Joshua Harris to obtain relief from his conviction in the Franklin County, Ohio, Court of Common Pleas for engaging in a pattern of corrupt activity, aggravated funding of drug trafficking, and aggravated trafficking in drugs and sentence of imprisonment in Respondent's custody. It is ripe for decision on the Petition (ECF No. 1), the State Court Record (ECF No. 9), the Warden's Return of Writ (ECF No. 10), and Petitioner's Traverse (ECF No. 16).

The Magistrate Judge reference in this case was transferred to the undersigned to help balance the Magistrate Judge workload in the District. Final decision of the case remains with District Judge Graham.

**Litigation History**

On January 9, 2017, the Franklin County, Ohio, grand jury returned a 39-count indictment against Smith and his co-defendants arising from a multi-state oxycodone trafficking operation. Smith was charged with engaging in a pattern of corrupt activity in violation of Ohio Revised Code § 2923.32, aggravated funding of drug trafficking in violation of Ohio Revised Code § 2925.05 and 27 counts of aggravated trafficking in drugs in violation of Ohio Revised Code § 2925.03 between March 2015 and June 2016. (Indictment, State Court Record, ECF No. 9, Ex. 1, PageID 34-69.)

On March 31, 2017, the Franklin County grand jury returned a second indictment charging Smith with three counts of aggravated trafficking involving bulk amounts of methamphetamine in violation of Ohio Revised Code § 2925.03, in December 2016. (State Court Record ECF No. 9, Ex. 6, PageID 80-81).

Pursuant to a plea agreement, Smith pleaded guilty on June 26, 2017, to engaging in a pattern of corrupt activity, aggravated funding of drug trafficking and thirteen counts of aggravated trafficking in drugs from the first indictment and one count of aggravated trafficking in drugs from the second indictment (State Court Record, ECF No. 9, Exs. 10-11; PageID 90-92; Exs. 12-13; PageID 93-95).

After presentence investigation, the court sentenced Smith to eleven years imprisonment for engaging in a pattern of corrupt activity, eight years for aggravated funding of drug trafficking, and two years in prison for each of the thirteen counts of aggravated trafficking in drugs. The first two terms were to be served consecutively and the others concurrently with each other and the first two counts. With respect to the second indictment, the court sentenced Smith to three years for

aggravated trafficking, to be served consecutively, for an aggregate term of twenty-two years. (State Court Record, ECF No. 9, Ex. 19, PageID 113-14).

With the assistance of new counsel, Smith appealed to the Tenth District Court of Appeals, which affirmed the conviction. *State v. Smith*, No. 17AP-636, 2018-Ohio-2271 (Ohio App. 10th Dist. Jun. 12, 2018); appellate jurisdiction declined, 153 Ohio St. 3d 1476 (2018). On September 11, 2018, Smith applied to reopen his appeal pursuant to Ohio App. Rule 26(B). (State Court Record, ECF No. 9, Ex. 32, PageID 224-39). The Tenth District rejected the Application on grounds it had already decided the issues raised on direct appeal (State Court Record, ECF No. 9, Ex. 34, PageID 246-47). Smith did not appeal to the Supreme Court of Ohio.

Smith then filed the instant Petition for writ of habeas corpus, pleading the following grounds for relief:

> **Ground One:** The trial court erred and Petitioner was denied due process of law when the court accepted Petitioner's plea when the plea was not knowingly, voluntarily or intelligently made.
>
> **Supporting Facts:** Petitioner accepted a plea agreement based on the inducement of the trial court's granting of bond/bail in the case. At the hearing for the bond, the court granted bond for Petitioner over the objection of the prosecution. The next day, the prosecution filed a motion to revoke the bond citing to evidence of which the court was aware when the bond was granted. The court then revoked Petitioner's bond on the day following the prosecution's motion without any additional hearing, without a response from the defense, and in Petitioner's absence. Petitioner was never released. After obtaining the Petitioner's plea on the inducement, which was subsequently revoked, the court sentenced the Petitioner six days later. Petitioner was induced to accept the plea via the granting of the bond, as admitted by the trial court, and would not have accepted the plea had he known the prosecution would act underhandedly and the court would renege on the agreement and his bond would be revoked within a few short days without a hearing and with no opportunity for release to address family and business issues prior to his incarceration.

3

**Ground Two:** Petitioner did not receive the effective assistance of counsel as constitutionally required when trial counsel failed to review the phone call evidence to determine that a revocation of bond was inappropriate when there was no evidence that calls were made in violation of the plea agreement.

**Supporting Facts:** Defense counsel never reviewed the record that was provided to the trial court in support of the motion to revoke his bond. The failure to review the recordings permitted the prosecution to submit records of which the trial court was already aware of when the bond was granted. There were no recordings of Petitioner violating the requirements of the bond related to the no-contact order with Petitioner's fiancé imposed by the trial court after the bond was granted by the court. The failure to review the recordings allowed the prosecution to improperly misrepresent Petitioner as being non-compliant with the trial court's order after bond was granted which resulted in a breach of the plea agreement. As no review of the record was made, no objection was filed with the court for the prosecution's aberrant behavior. Defense counsel, upon discovery of the issue of the breach and reneging, did not file a motion to withdraw Petitioner's plea.

**Ground Three:** Petitioner did not receive the effective assistance of counsel when defense counsel did not submit evidence or testimony to correct the "worst [presentence investigation]" ever seen, which prejudiced Petitioner at sentencing.

**Supporting Facts:** Prior to Petitioner's sentencing, a presentence investigation (PSI) was ordered. The PSI contained many inaccuracies and falsehoods that were prejudicial to Petitioner. The trial court also utilized evidence that was not in the PSI to provide Petitioner a harsher sentence. The failure of trial counsel to address these issues related to mitigation resulted in Petitioner receiving a harsher sentence.

(Petition, ECF No. 1, PageID 5-8).

In his Traverse, Petitioner argues that the prosecutor mischaracterized the evidence and relied on facts outside the record in arguing the case (ECF No. 16, PageID 379-81). He argues the trial judge was biased against him because the judge's own son is addicted. *Id.* at PageID 381, quoting Sentencing Tr., ECF No. 9-2, PageID 308, 319. Finally he argues the prosecutor committed misconduct be arguing that Petitioner should be made an example of with a heavy

sentence. *Id.* at PageID 382, quoting Sentencing Tr., ECF No.9-2, PageID 302. This Report makes no effort to analyze these claims since they are not pleaded as separate grounds for relief.

# Analysis

**Ground One: Involuntary Guilty Plea**

In his First Ground for Relief, Petitioner asserts his guilty plea should be set aside because it was not voluntary in that it was induced by unkept promises by the trial court and the prosecutor. Specifically, he claims his guilty plea was induced by a promise, made by both the trial court and the prosecutor, that his bond would be reduced to an amount he could afford.

Petitioner pleaded guilty on June 26, 2017 (Plea Tr., ECF No. 9-1, PageID 268, *et seq.*). During the plea colloquy, the trial court judge ensured that Petitioner knew the minimum and maximum sentences of eleven to 126 years for the crimes to which he was pleading and understood the rights he was giving up. As to voluntariness, the court inquired:

> THE COURT: Has anybody threatened you, coerced you, or promised you anything in order to get you to plead guilty or waive these rights?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Other than I did tell your lawyer I would reinstate the $250,000 bond, I believe lower the other bond to 100,000, so it's probably a bond you're going to make. And, again, I've already warned you about all that[1]. But other than that, has anybody done or said anything to make you plead guilty or waive these rights?
>
> THE DEFENDANT: No, sir.

*Id.* at PageID 279. The record shows that the same day as the guilty plea, the judge reduced bond

---

[1] The trial judge spoke several times about the consequences of violating the conditions of release.

in both cases (State Court Record, ECF No. 9, Exs. 11, 13, PageID 92, 95).[2]

In part of Ground One, Smith alleges the State breached the plea agreement. The day after the guilty plea was entered, the State moved for reconsideration of the bond, alleging Petitioner had violated the condition that he have no contact with co-defendants by calling Alicia Adkins 136 times since the bond hearing in April (State Court Record, ECF No. 9, Ex. 14, PageID 97.) On July 6, 2017, Judge Mark Serrott rescinded the new bond, which had been set on June 26, reinstated the original bond, and then revoked it for violation of the "stay away order." *Id.* at Ex. 15, PageID 99. The same order acknowledges that bond had not been posted pursuant to the June 26 order. That implies the truth of Petitioner's allegation that he never in fact was released on the June 26 bond.

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement for consideration, such a promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). In reducing bond at the time of the plea hearing, the court noted that it was over the objection of the prosecutor (Plea Tr., ECF No. 9-1, PageID 286.) The prosecutor outlined the terms of the plea agreement at some length and mentioned, *inter alia*, that there was a joint recommendation for a presentence investigation. He did not recite that he agreed to a reduction of bond and neither Petitioner nor his counsel did either. It appears likely that Judge Serrott made an off-the-record comment to defense counsel that he would reduce the bond if Smith pleaded guilty. The judge seems to have had some idea, presumably from defense counsel, of the amount of bond Smith would be able to post. *Id.* at

---

[2] Petitioner claims these documents are not valid court orders because they are not signed by the judge. The Magistrate Judge presumes Petitioner is alleging that a manual or ink signature is required for validity. However, each form bears the trial judge's purported electronic signature in the following form "/s/ Judge Serrott, Mark." No rule of law prescribes the form of a judicial signature. In fact, this Court also uses electronic signatures of the form "s/Judge's Name."

Thus, Petitioner has not proved that there was an agreement between him and the State that the State would recommend a bond reduction, much less that it would not move for reconsideration of any reduction on the basis of evidence the judge did not have before him when taking the plea.[3]

Obviously, facts or considerations that are not part of a plea agreement may induce a defendant to accept the agreement. For example, in a sexual offense case, a defendant may be remorseful and wish to spare the victim the pain of reliving the offense. Here, the trial judge candidly acknowledged that Smith had a reasonable expectation of a bond reduction, based on the judge's conversation with defense counsel and that expectation could well have helped induce him to accept the plea bargain. But a bond reduction recommendation from the prosecutor was not a bargained-for term of the plea agreement.

Petitioner relied on appeal and again relies here on *State v. Bowen*, 52 Ohio St. 2d 27 (1977) (Traverse, ECF No. 16, PageID 393). In that case the prosecutor made, as part of the plea agreement, a promise to recommend that two sentences be run concurrently when the law did not allow concurrent sentences for the offenses involved. *Bowen*, 52 Ohio St. 2d at 29-30. *Bowen* is inapposite because the prosecutor there made a promise which was illusory: a recommendation for concurrent sentences could have no benefit to a defendant when the sentences were legally required to run consecutively. Thus, Ground for Relief One is without merit insofar as it claims the State breached the plea agreement.

The second part of Ground One claims trial court erred in not reducing the bond as the judge had indicated he would. This claim is procedurally defaulted by failure to properly present it to the court of appeals. The Tenth District held

---

[3] Petitioner claims the judge knew of the offending telephone calls before taking the guilty plea, but provides no record proof of that.

> {¶18} Although appellant's first assignment of error expressly states the alleged improper inducement of lowered bond was introduced by the prosecution, he appears to further argue that the court itself extended the inducement. That is not the assignment of error stated on appeal. Pursuant to App.R. 12(A)(1)(b), appellate courts "determine [an] appeal on its merits on the assignments of error set forth in the briefs under App.R. 16." Thus, this court rules on assignments of error only and will not address mere arguments. *State v. Armor*, 10th Dist. No. 16AP-532, 2017-Ohio-396, ¶ 26; *Ellinger v. Ho,* 10th Dist. No. 08AP-1079, 2010-Ohio-553, ¶ 70; *In re Estate of Taris*, 10th Dist. No. 04AP-1264, 2005-Ohio-1516, ¶ 5.

*Smith*, 2018-Ohio-2271.

The procedural default doctrine in habeas corpus is described by the United States Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); accord: *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the

exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124
S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which
a state prisoner fails to exhaust state remedies, a habeas petitioner
who has failed to meet the State's procedural requirements for
presenting his federal claims has deprived the state courts of an
opportunity to address" the merits of "those claims in the first
instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111
S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default
doctrine thus advances the same comity, finality, and federalism
interests advanced by the exhaustion doctrine. See *McCleskey v.
Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

The United States Court of Appeals for the Sixth Circuit requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)

> First the court must determine that there is a state procedural rule
> that is applicable to the petitioner's claim and that the petitioner
> failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually
> enforced the state procedural sanction, citing *County Court of Ulster
> County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777
> (1979).
>
> Third, the court must decide whether the state procedural forfeiture
> is an "adequate and independent" state ground on which the state
> can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not
> complied with and that the rule was an adequate and independent
> state ground, then the petitioner must demonstrate under *Sykes* that
> there was "cause" for him to not follow the procedural rule and that
> he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d at 138.

It is axiomatic in Ohio appellate practice that the appeals court only decides assignments

of error that have been properly raised and briefed. *See* Ohio App.R. 12(A), 16(A)(7) (requiring the appellant brief to include "the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."); *Hawley v. Ritley*, 35 Ohio St. 3d 157, 159 (1988), quoting *Uncapher v. Baltimore & Ohio R.R. Co.*, 127 Ohio St. 351, 356 (1933) ("Errors not treated in the brief will be regarded as having been abandoned . . .). Here Petitioner complained on appeal that the prosecutor had not kept the plea bargain; his first assignment of error reads:

> [1.] The trial court erred in accepting defendant-appellant Smith's guilty plea as knowingly, voluntarily, and intelligently entered where the prosecution mislead [sic] the defendant and counsel regarding the bargain. *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709 (1969); Crim.R. 11.

(Appellant's Brief, State Court Record, ECF No. 9, Ex. 24, PageID 137.) Thus, Petitioner did not raise the trial court's honor its promise as an assignment of error on appeal and the Tenth District declined to reach the merits of that claim because it was not properly pleaded. The State's interest in structuring appellate litigation so as to focus the issues is an adequate state procedural rule independent of federal law. Furthermore, Smith has offered no caused and prejudice to excuse this failure: he did not include failure to plead an appropriate assignment of error as one of the omitted assignments of error raised in his Application for Reopening. Therefore, the procedural default of this portion of Ground One remains unexcused.

Respondent argues a further basis of procedural default: failure to appeal to the Supreme Court of Ohio from denial of the 26(B) Application. Petitioner seeks to excuse this default on the basis of prison mailing procedures. The Court need not reach this issue because the default was complete in the 26(B) Application itself.

**Ground Two: Ineffective Assistance of Trial Counsel: Failure to Review Evidence**

In his Second Ground for Relief, Smith alleges he received ineffective assistance of trial counsel when his attorney did not review the recordings or transcripts of recordings of his telephone calls from the Franklin County Jail which were alleged to have violated the conditions of his bond.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

Smith raised this claim as his second assignment of error on direct appeal, pleading: "Trial counsel offered ineffective assistance of counsel by failing to review the discovery disc of jail calls disclosed after change of plea but before sentencing, resulting in prejudice to the defendant-appellant." (Appellant's Brief, State Court Record, ECF No. 9, Ex. 24, PageID 137).

The Tenth District decided this assignment of error as follows:

{¶ 21} Appellant's second assignment of error asserts he received ineffective assistance of trial counsel because his counsel appeared at the sentencing hearing without having reviewed the recorded jailhouse telephone calls that were disclosed by the prosecution in discovery after the plea hearing.

{¶ 22} In order to establish a claim of ineffective assistance of counsel in violation of the rights granted under the Sixth and Fourteenth Amendments to the United States Constitution, a defendant must first demonstrate his trial counsel's performance was so deficient that it was unreasonable under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The defendant must then establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

{¶ 23} "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsels challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689, quoting *Michel v. Louisiana,* 350 U.S. 91, 101 (1955). A verdict adverse to a criminal defendant is not of itself indicative that he received ineffective assistance of trial counsel. *State v. Hester,* 45 Ohio St.2d 71, 75 (1976).

{¶ 24} At the sentencing hearing, prosecution verbally described and emphasized many aspects of these recorded telephone conversations. The prosecution summarized the contents of these conversations as indicating that appellant had a propensity for violence, that he had fabricated a fable involving health issues for his daughter in order to gain sympathy, that appellant's purported business buying and rehabilitating houses actually involved using properties as grow houses for marijuana, and that appellant had tampered with and threatened witnesses.

{¶ 25} In addressing the prosecution's summary for these jailhouse conversations, appellant's trial counsel stated only that he was

> impressed by the prosecutor's exceptional and possibly personally vindictive devotion to the case given the amount and duration of phone calls described at the hearing. Counsel then stated "I didn't come here and listen to 200 hours of phone calls to determine what's relevant and what's going to be relevant to what I can respond to or whether we can put each one of these phone calls in context." (Sentencing Tr. at 16.)
>
> {¶ 26} Appellant now argues on appeal trial counsel was ineffective because the failure to review the phone transcripts deprived appellant of the opportunity to counter the prosecution's allegations based on those conversations. Instead of countering with the specific content of those jailhouse conversations, appellant's trial counsel prepared a sentencing memorandum, reviewed the PSI, and presented two family members to speak on appellant's behalf at sentencing. Then, appellant's trial counsel deferred to appellant, who personally addressed the court and explained the content of the jailhouse calls and mitigated their impact.
>
> {¶ 27} Trial counsel's decision not to review the lengthy jailhouse phone call transcripts is not, on its face, ineffective when trial counsel relied on other means to present mitigation and when appellant himself had the opportunity, perhaps more effectively than trial counsel could have, to explain the content of the conversations. Appellant's second assignment of error is overruled.

*Smith*, 2018-Ohio-2271.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

The Tenth District's decision on this assignment of error was neither contrary to nor an objectively unreasonable application of *Strickland*. The appellate court recognized *Strickland* as the governing case. It then noted that, while having trial counsel review the two hundred hours of

tape would have been one way to approach dealing with those calls, it was not deficient performance to present other mitigating evidence and then allow Smith himself to explain the calls. He was, after all, the person most competent to explain his meaning. Indeed, anything counsel would have said would only have been a repetition of what Smith told him. Ground Two should therefore be denied on merits.

**Ground Three: Ineffective Assistance of Counsel: Failure to Correct the PSI**

In his Third Ground for Relief, Smith asserts he received ineffective assistance of trial counsel when his trial attorney failed to correct "inaccuracies and inconsistencies" in the presentence investigation report. This was Smith's third assignment of error on appeal (State Court Record, ECF No. 9, Ex. 24, PageID 137), and the Tenth District decided it on the merits, employing the same *Strickland* precedent as on the second assignment. The appellate court decided:

> {¶ 29} Trial counsel prepared a sentencing memorandum and called witnesses in mitigation. Trial counsel also spoke to state the PSI did not reflect appellant's true nature as defense counsel, friends, and family knew appellant.
>
> {¶ 30} While the contents of the PSI are prejudicial in the sense they did not help appellant's case, they are not challenged as inaccurate or improper, nor are they rebutted as to their factual veracity. The PSI is available for review by this court on appeal. It is lengthy, detailed, and not flattering to appellant. The content of the PSI report is not attributable to the competence of appellant's trial counsel. Trial counsel was not ineffective in this respect, and appellant's third assignment of error is overruled.

*Smith*, 2018-Ohio-2271.

In his Traverse, Smith does not set forth any of the supposed inaccuracies and inconsistencies in the PSI (ECF No. 16, PageID 407-08.). Nor does he offer any record reference

to evidence that would contradict or rebut what is in the PSI. As he notes, the PSI was not included in the State Court Record filed here, and he asks that the record be expanded to includes the PSI and additional briefing be allowed. Apparently, he believes the PSI will be self-evidently in error. But the Tenth District already considered the PSI in the context of the appellate record and found no such self-evident error.

This Court cannot consider evidence outside the direct appeal record to determine if statements made in the PSI are in error. *Cullen v. Pinholster*, 563 U.S. 170 (2011). To present such evidence, Smith would have had to file a petition for post-conviction relief under Ohio Revised Code § 2953.21 which he has not done and the deadline for doing so has expired. Because he has made no showing of error in the PSI, Smith has not shown his counsel provided ineffective assistance of trial counsel by not rebutting statements made there. The Tenth District's decision on this claim is therefore entitled to deference under 28 U.S.C. § 2254(d)(1) and should be dismissed on the merits.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

March 3, 2020.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).